**UNITED STATES, Appellee,**

v.

**Howard Leon JACKSON, Private, U.S. Army, Appellant.**

No. 31,781.

CM 432684.

U. S. Court of Military Appeals.

March 26, 1979.

Appearances: For Appellant, *Captain Barry J. Wendt* (argued); *Colonel Alton H. Harvey, Captain John R. Osgood* (on brief); *Lieutenant Colonel John R. Thornock.*

For Appellee—*Major Michael B. Kennett* (argued); *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Captain William C. Kirk, Captain Gay M. Holmes* (on brief); *Colonel Thomas H. Davis.*

### Opinion of the Court

PERRY, Judge:

The appellant was convicted by a general court-martial of attempted murder, assault with a dangerous weapon, and absence without leave for 11 days, in violation of Articles 80, 128, and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 928, and 886, respectively. He was sentenced by the court to confinement for 10 years, forfeiture of all pay and allowances for 10 years and reduction to the lowest enlisted grade. The United States Army Court of Military Review reduced the period of confinement and forfeitures to 5 years each, but otherwise affirmed the conviction as to all charges. We granted review to consider the appellant's claims that (1) the military judge erred by failing to instruct the court panel concerning the lesser included offenses of attempted voluntary manslaughter and assault with intent to commit voluntary manslaughter, and (2) that the appellant is entitled to dismissal of all charges because the final review by the convening authority was not completed until 91 days after sentence was imposed.

We have reviewed the record of the proceedings and the decision of the Court of Military Review as they relate to the issue of post-trial delay, along with the arguments of the parties, and conclude that the Court of Military Review correctly decided the issue. No useful purpose will be served by reciting the circumstances which justify the Court of Military Review's resolution of the issue.

Examination of the record has led us to the discovery of some evidence which, in our view, required the trial judge to instruct upon the lesser included offense of attempted voluntary manslaughter as to the specification which alleged the attempted murder of Private McNeil.[1] The record reflects that Private McNeil had given the appellant a substance purported to be cocaine to sell for him. On May 21, 1974, McNeil demanded $200 in payment for the drug, but the appellant refused, claiming that it was not a narcotic at all.[2] From that point on, over a period of several days, the appellant was subjected off and on to beatings by McNeil and two henchmen at a secluded location, as well as at the appellant's own apartment. Early on the day of the shooting, McNeil again approached the appellant—this time at the appellant's place of work—to assert his demand for the money, and he proceeded to beat the appellant. Thereafter, the appellant visited the chaplain but received no aid. Later that day, the appellant again was accosted and beaten by McNeil at the appellant's barracks. Subsequent to this second beating that day, the appellant sought help from his first sergeant, but he received none. These beatings over a period of several days were administered, at varying times, by a pistol, a pipe, and tent post stakes. Additionally, twice during this period of time, McNeil had threatened the appellant with death. The appellant knew that McNeil had a pistol and that McNeil implicitly had threatened another man on an earlier occasion with that pistol for not paying for cocaine. In fact, on the day of the incident here involved, the appellant saw McNeil in the latter's car holding a gun.

The appellant went to the day room of his barracks on May 31 to play some pool. McNeil entered shortly thereafter and again demanded the money from appellant. McNeil began pushing the appellant around and threw him against a wall. The appellant managed to leave the room, but he returned one or two minutes later with a pistol. The appellant testified that he did not know that the gun was loaded, nor did he intend to shoot or kill McNeil; all that the appellant wanted was to force McNeil to leave him alone. However, when McNeil saw that the appellant had a gun pointed at him, he shouted, "Shoot, shoot mother fucker." Simultaneously with this taunt, the appellant stated he saw McNeil reaching behind himself and the appellant said he thought it was for McNeil's pistol. Thereupon, the appellant began firing. McNeil was struck several times, as was a bystander whom McNeil had grabbed during the firing. After the incident, the appellant went to the first sergeant's office, put the gun on the desk, and sat down. Much of the appellant's version was supported by other defense witnesses. In addition, there was evidence of McNeil's violent and aggressive character, as well as the appellant's reputation as a peaceable person.

Our concern is whether, under this state of the evidence, the failure of the trial judge to instruct *sua sponte* on the lesser included offense of attempted voluntary manslaughter constituted prejudicial error.

■ We observe that an attempt exists where the acts of the appellant would have constituted the substantive offense if some unforeseen circumstance had not intervened to prevent its completion. *See* Article 80(a), 10 U.S.C.A. § 880(a), *supra.* Therefore, the question, reduced, is whether there is any evidence in the record which would have raised the offense of voluntary man-

---

1. We limit our consideration to the failure to instruct on this offense and do not address instructions concerning assault with intent to commit voluntary manslaughter, because under the circumstances of this case, one amounts to the other. *See United States v. Herrington*, 33 C.M.R. 814 (A.F.B.R.1963), *pet. denied*, 14 U.S. C.M.A. 678, 33 C.M.R. 436 (1963). *See also* paragraph 207a, Manual for Courts-Martial,

United States, 1969 (Revised edition), which defines assault, in pertinent part, as an *attempt* to do bodily harm to another with unlawful force or violence.

2. One defense witness testified that McNeil was known as a "burn man"—a person who set people up with counterfeit drugs and then demanded payment as though it were genuine.

slaughter had a homicide occurred. *United States v. McGee,* 1 M.J. 193 (C.M.A.1975).[3]

The essence of voluntary manslaughter concerns the effect of heat of sudden passion caused by adequate provocation. We have held that "fear may be sufficient to excite uncontrollable passion." *United States v. Desroe,* 6 U.S.C.M.A. 681, 691, 21 C.M.R. 3, 13 (1956). *See also United States v. Judkins,* 14 U.S.C.M.A. 452, 34 C.M.R. 232 (1964). Once there is some evidence of fear in the record, it is for the jury to make "the ultimate determination of the existence and degree of such fear." *Id.* at 456, 34 C.M.R. at 236. What the Army Board of Review said in *United States v. Roman,* 40 C.M.R. 561, 565–66 (1969), makes the key point:

We do not believe that a positive statement of fear, a form of emotional agitation, necessarily should be the decisive factor in resolving the issue under consideration. Rather, the existence of fear itself, from whatever source, is determinative of the question. Thus, where, as here, adequate provocation and fear are inferable from the total circumstances as reasonable alternatives to the government's interpretation of the evidence, it is enough to place that offense in issue. We are persuaded, too, that our conclusion is unassailable, for the law officer

3. We caution that the question does not involve whether the evidence would sustain a conviction for attempted voluntary manslaughter, since more evidence is required for that purpose than to require an instruction. *United States v. Judd,* 11 U.S.C.M.A. 164, 168, 28 C.M.R. 388, 392 (1960). In the former instance, proof beyond a reasonable doubt is necessary, whereas, in the latter, it is enough if the possibility is raised.

4. At the appellant's trial, too, the jury was instructed upon the theory of self-defense, and was advised to "consider all the relevant facts and circumstances including . . . the fact that previous threats, according to the accused, had been made to him; the fact that the accused had a pistol; the fact that McNeil had a pistol; the fact that McNeil was of a bad character, *and that that fact was known to the* accused." Further, the jury was advised of the effect of the appellant's using his pistol "to deter McNeil from aggressive action." Thus, in the context of self-defense, the jury was instructed concerning the effect of fear by the accused.

also concluded that fear was reasonably in issue, otherwise he would not have instructed on self-defense.[4]

■ There is evidence of record that McNeil had provoked and terrorized the appellant through several confrontations over a period of time prior to the shooting incident—evidence from which the jury could have concluded that the appellant acted out of provocation and fear so as to reduce the legal result of his action to attempted voluntary manslaughter. *United States v. Clark,* 22 U.S.C.M.A. 576, 48 C.M.R. 83 (1973). Under these circumstances, it was incumbent upon the trial judge to instruct on the offenses raised by the evidence, whether or not requested by the defense counsel.[5] *United States v. Graves,* 1 M.J. 50 (C.M.A.1975).

The decision of the United States Army Court of Military Review is reversed as to specification 1 of the charge and the sentence. In all other respects, it is affirmed. The record of trial is returned to the Judge Advocate General of the Army for referral to the Court of Military Review which may either affirm the lesser offense of attempted voluntary manslaughter and reassess the sentence, or order a rehearing.

Chief Judge FLETCHER concurs.

It is true that the jury rejected the self-defense argument. That, however, does not obviate the necessity to have instructed on attempted voluntary manslaughter, for "fear may either produce passion *or* a reasonable belief that death is imminent." *United States v. Desroe,* 6 U.S.C.M.A. 681, 690, 21 C.M.R. 3, 12 (1956) (emphasis added). This is recognized in paragraph 198*a,* Manual, *supra,* which states that the provocation involved in voluntary manslaughter need not justify "defense of life." Thus, *rejection of one does not necessarily include the other,* so the fact that the jury rejected self-defense does not mean they would have rejected attempted voluntary manslaughter.

5. The Court again emphasizes to all participants in the trial that it is absolutely essential that *all* factual issues and offenses raised at all in the evidence be the subject of instructions—requested or not—by the trial judge. This is demanded not out of an abundance of caution, but from the desire that the fact-finding function be exercised to the fullest by the jury—the essence of a fair trial. *See United States v. McGee,* 1 M.J. 193 (C.M.A.1975).

COOK, Judge (dissenting):

Appellant's trial terminated on August 27, 1974, and the convening authority's action is dated November 26, 1974; a period of 91 days. Appellant was confined during this period and a presumption arises that he was denied a speedy disposition of his case. *Dunlap v. Convening Authority*, 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974). The only reason advanced by the Government to overcome this presumption is that the command in question was experiencing a shortage of personnel during this period. We have repeatedly rejected the argument that an alleged but unexplained shortage of personnel is an extraordinary circumstance which will justify a delay in excess of 90 days. *United States v. Larsen*, 1 M.J. 300 (C.M.A.1975). Accordingly, I disagree with the majority's departure from the precedents of this Court and would reverse the decision of the Court of Military Review, and order the charges and their specifications dismissed.[1]

1. My resolution of this issue renders it unnecessary to address the remaining issue.